# RKO BOTTLERS OF FORREST CITY, INC. *v.* R. A. HALLEY

78-273                                                    577 S.W. 2d 409

Opinion delivered February 26, 1979
(Division I)

*Rieves, Rieves & Shelton,* by: *Connie Lewis Mayton,* for appellant.

*Ray & Donovan,* for appellee.

GEORGE ROSE SMITH, Justice. The appellee, R. A. Halley, is a merchant owning a retail store in the community of Brickeys, in Lee County. On April 28, 1976, what we may refer to as a PepsiCola Bottling Company truck was being used to deliver bottled soft drinks to Halley's store. A deliveryman on the truck, whose name is not shown, got into an altercation with Halley and attacked him, inflicting severe personal injuries. This appeal is from a $10,000 personal injury judgment against the appellant, RKO Bottlers of Forrest City. RKO contends, first, that the deliveryman was not its employee and, second, that the court erred in giving an instruction requested by the plaintiff. We find merit in the second contention.

The owner and driver of the PepsiCola truck was Delmar Frames, whom the jury found to be an employee of RKO. RKO now contends that it was entitled to a directed verdict, on the ground that Frames was an independent contractor rather than an employee, which in turn would make Halley's assailant an employee of Frames. RKO relies upon a written contract between it and Frames, which contained standard language purporting to make Frames an independent contractor. It was also shown that Frames owned the truck, that he employed his own helpers, that RKO did not carry workers' compensation insurance upon Frames, and that it did not withhold social security taxes or other deductions from Frames's pay.

Other facts, however, raised a question for the jury. *Terry Dairy Co.* v. *Parker,* 144 Ark. 401, 223 S.W. 6 (1920). We enumerate some of them. RKO is identified at its place of business and in the telephone book as PepsiCola Bottling Company. Frames and his helpers wore PepsiCola uniforms. Frames was required to paint his truck with PepsiCola's colors. The truck was lettered with a PepsiCola sign. Frames was assigned a territory, to which he was restricted. He could handle only RKO's beverages. He "purchased" his daily

supply of soft drinks, in bottles that belonged to RKO, but he did not pay for the merchandise in the morning. Instead he made deliveries during the day, collecting cash or accepting charge tickets from customers approved by RKO. Those charge customers paid their accounts directly to RKO. When Frames returned to RKO in the evening he paid for what he had sold, in cash and by using the charge tickets. RKO fixed the price at which Frames bought and the price at which he sold. In selling to Halley, Frames used a sales slip provided by RKO, which had RKO's name at the top and identified Frames as a salesman. We need not detail the proof any further. It was amply sufficient to warrant the jury in finding that Frames was not an independent contractor but an employee working on a commission basis, subject to RKO's control.

The court erred, however, in giving this instruction for the plaintiff:

The unexplained failure of a party to produce a witness with special knowledge of the transaction, if within the power of the party to do so, raises a presumption that he would testify against the party and that the testimony would have been unfavorable.

There are two reasons why the instruction should not have been given. First, the actual facts about Frames's relationship with RKO are not in dispute. The jury could only have speculated about what Frames might have testified with respect to a material fact in the case. *See Ark. State Highway Commn. v. Phillips,* 252 Ark. 206, 478 S.W. 2d 27, 71 A.L.R. 3d 1105 (1972). In other words, the unfavorable inference to be drawn by the witness's absence does not go indefinitely to the whole case. Wigmore, Evidence, § 290 (3d ed., 1940). Here the possible area of conflict is not pinpointed.

Second, RKO argues quite properly that there is no showing that it was in a superior position to produce Frames as a witness, Frames having left its employ before the trial. The appellee makes no effort to answer RKO's argument, but insists instead that the instruction referred to a former

132

RKO employe named Miller. The appellee points out that RKO obtained two continuances on the ground that Miller was an indispensable witness who was temporarily not available. The trouble is, Miller did not appear at the trial and there is no indication in the record that the members of the jury ever heard of Miller. It was patently impossible for the jury to assume that the instruction referred to someone whose identity and whose possible testimony were totally unknown to the jury.

Reversed.

We agree. HARRIS, C.J., and BYRD and PURTLE, JJ.